# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LARRY D. SMITH, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL J. ASTRUE, Commissioner of Social Security, <br><br> Defendant. | 1:10-cv-01527 GSA <br><br> **ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

**BACKGROUND**

Plaintiff Larry D. Smith ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability insurance benefits pursuant to Title II of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Gary S. Austin, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (*See* Docs. 9 & 10.)

1

# FACTS AND PRIOR PROCEEDINGS[2]

Plaintiff filed an application for disability insurance benefits in June 2006, alleging disability beginning November 1, 2005. AR 145-149. Plaintiff's application was denied initially and on reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 105-115. ALJ Michael J. Kopicki held a hearing on May 5, 2009, and issued an order denying benefits on July 22, 2009, finding Plaintiff was not disabled. AR 8-17, 121-124. On June 29, 2010, the Appeals Council denied review. AR 1-3.

**Hearing Testimony**

ALJ Kopicki held a hearing on May 9, 2009, in Fresno, California. Plaintiff appeared and testified; he was assisted by attorney Robert D. Hubbs. Vocational Expert ("VE") Kenneth Ferra also testified telephonically. AR 18-72.

Plaintiff was forty-nine years old at the time of the hearing. AR 25. He is six feet one inch tall, weighs 215 pounds and is left-handed. AR 25-26. Plaintiff lives with his parents, both of whom are retired and in their 70's. AR 24. He is presently separated from his wife. He has two boys in their 20's, one of whom is in prison. AR 26. Plaintiff does not have any source of income. He does receive food stamps. AR 24.

Beyond high school graduation, Plaintiff has attended community college courses for about two to three years. He earned six certificates from Shasta College in heavy-duty equipment repair. AR 25. Plaintiff also served in the Army and received an honorable discharge. AR 25.

In September 2005, Plaintiff began experiencing sharp pain in his right arm and thumb. Eventually, in November of that year, he underwent surgery on his neck. AR 27. He remained on his employer's payroll, despite being off work, until the following May. AR 27-28. Prior to having neck surgery, Plaintiff suffered from painful headaches. AR 31. The surgery was successful; he no longer has headaches or popping in the neck. AR 32. He does feel pain in his shoulder socket on the right side, but believes that to be separate from the neck. AR 42-43.

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

When asked to identify his biggest present problem that does not permit him to work, Plaintiff indicated his lower back is the biggest problem. More particularly, a sharp stabbing pain in the lower back that travels into his right leg. AR 28. The more active Plaintiff is, the greater the pain. Pain medications take the edge off, but do not completely resolve the pain. AR 29. In the past, he has used a TENS unit to treat pain in his "whole back." AR 29-30. Plaintiff has been told that surgery on his back is not advisable "because the benefits are worse than the risks." AR 30. He was told this by a neurosurgeon in Martinez, whom also advised him to stop jogging and to limit "jolt[ing]" activities. AR 30-31.

Plaintiff is followed and treated for hepatitis. AR 32. He feels a constant ache on his right side. He has received Interferon treatments on two separate occasions. AR 32-34.

In 1986, Plaintiff broke his right ankle. He still feels a throbbing pain that sometimes shoots up the leg and down into the foot. The pain in his ankle affects his ability to work, because the more he uses it the more painful it becomes. AR 34.

In the past three years, Plaintiff has suffered three fractured ribs. Just two weeks prior to the hearing, Plaintiff fell and fractured a rib. AR 45. About four to five months prior to that occasion, while in Redding, Plaintiff fell off a step and landed on his back. AR 45-46. He attributes the falls to his ankle because it just gives out on him. AR 45-46.

Plaintiff has difficulty sleeping due to sleep apnea and insomnia. AR 35. He indicated he sleeps an average of eleven to fifteen hours a week. AR 40. Plaintiff has used Tylenol PM and Benadryl to help him fall sleep. AR 40. Because he doesn't get enough sleep, he is tired all the time. Nevertheless, he cannot nap during the day. AR 41-42. Plaintiff has a CPAP device as a result of the sleep apnea, but indicated it "irritates" him and causes him to awaken. AR 42. As a result of his fatigue, he is not alert, and is "a little spacey now and then." AR 42.

While he has been diagnosed with depression, Plaintiff does not take any medication related to his depression, nor does he attend therapy or counseling sessions. AR 35. He does take Alprazolam for anxiety. AR 35-36. He does not attend therapy or counseling due to a lack of transportation. AR 35. As a result of a driving under the influence conviction, Plaintiff's

3

license was suspended. Thus, he must rely on his parents for transportation and does not wish to impose on them too often. AR 35.

When asked to describe a typical day, Plaintiff indicated he gets up around 5:00 or 6:00 a.m. He used to go to school, but does not attend any longer. He tries to help his dad in the back yard and help his mom around the house. AR 47. Specifically, when helping his dad in the backyard, Plaintiff will use a self-propelled lawn mower to mow about 350 to 400 square feet of lawn. He also waters the lawn. AR 47. Plaintiff cares for and feeds three dogs: a Labrador and two Dachshunds. AR 48. He will occasionally go grocery shopping with his parents. AR 48. When he helps his mother around the house, Plaintiff picks up after himself and will occasionally vacuum or perform whatever chore his mother asks him to do. AR 48. He watches about seven hours of television a day. AR 49. He does not read for pleasure much, other than an occasional magazine article. AR 50. Plaintiff uses his parents' computer to check email and surf the web. AR 51. He does not have any hobbies, nor does he belong to any clubs or organizations. AR 51. He does not attend church. AR 52. Plaintiff visits with friends when they pick him up. AR 51.

Plaintiff used to attend West Hills College in Lemoore, but the workload became overwhelming. He was taking over twelve units, including algebra and biology. AR 49-50. He dropped out and is not sure whether he will go back. AR 50-51. While he was attending school, about ninety percent of the classes he took were online classes. AR 51, 56. For a period of time, Plaintiff received extra help regarding study habits and memory training. AR 54-56.

When asked how far he can walk, Plaintiff indicated he can walk about three quarters of a mile before the throbbing and stabbing pain sets in. He can stand about three hours and can sit for about three hours. AR 52. He does not know how much weight he can lift. AR 52.

Plaintiff's work history for the previous fifteen years involves the following positions: long haul truck driver, maintenance mechanic, dispatcher, delivery driver, garbage collector and construction worker. Some of the work involved very heavy lifting. AR 57-63.

VE Kenneth Ferra indicated that Plaintiff's past relevant work was semi-skilled with an SVP[3] of four, varying in exertional levels to very heavy.  AR 65.

The VE was asked to consider a hypothetical worker of Plaintiff's age, education and work history, with the ability to lift twenty pounds occasionally and ten pounds frequently, who can stand or walk for six hours in an eight-hour workday and sit for six hours in an eight-hour workday, and whom can occasionally climb, stoop, kneel and crawl, with an additional limitation to simple, routine work.  AR 65-66.  VE Ferra indicated such an individual could not perform Plaintiff's past relevant work.  AR 66.  However, the individual is capable of performing the work of a cleaner, DOT[4] 323.687-014, with approximately 56,000 jobs available in California; a packing-line worker, DOT 753.687-038, with approximately 31,000 positions available in the state; and a sorter, DOT 539.687-186, with approximately 3,800 positions available.  National figures are obtained by multiplying the state number by ten.  AR 66.

In a second hypothetical, the VE was asked to assume a hypothetical worker of Plaintiff's age, education and work history, with the ability to lift less than ten pounds either occasionally or frequently, who can stand or walk less than two hours in an eight-hour workday, who can sit for three hours in an eight-hour workday, and whom should never climb, balance, stoop, kneel, crouch or crawl, and whom should avoid moving machinery and extreme temperatures.  AR 67. The VE indicated such an individual could not perform Plaintiff's past work, nor any other work in the national economy.  AR 67.

**Medical Record**

The entire medical record was reviewed by the Court.  AR 239-602.  The medical evidence will be referenced below as necessary to this Court's decision.

**ALJ's Findings**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard.  AR 8-17.

---

[3]"SVP" refers to specific vocational preparation.

[4]"DOT" refers to the Dictionary of Occupational Titles.

More particularly, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 1, 2005. AR 10. Further, the ALJ identified the following severe impairments: degenerative disease of the cervical spine, status post fusion; degenerative disc disease of the lumbar spine; degenerative joint disease of the right ankle; sleep apnea; hepatitis C; and an adjustment disorder. AR 10. Nonetheless, the ALJ determined that the severity of the Plaintiff's impairment did not meet or exceed any of the listed impairments. AR 10-12.

Based on his review of the entire record, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to perform the full range of unskilled, light work. AR 12-16.

Next, the ALJ determined that Plaintiff could not perform his past relevant work. AR 16. Nevertheless, based upon Plaintiff's age, education, work experience and RFC, the ALJ determined there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. Specifically, the ALJ found Plaintiff could perform the work of a cleaner, packager, and sorter. AR 16-17.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by

substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

**REVIEW**

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

Here, Plaintiff argues that the ALJ's findings are not supported by substantial evidence and are not free of legal error because the ALJ failed to give specific and legitimate reasons for discounting the opinion of Plaintiff's treating physician, and erred when assessing Plaintiff's credibility. (Doc.14.)

**DISCUSSION**

*The ALJ's Consideration of the Medical Opinion Evidence*

Plaintiff argues that the ALJ erroneously rejected the opinion of his treating physician, Dr. Ney M. Aung. More specifically, he asserts the ALJ failed to provide specific and legitimate reasons for rejecting the expert's opinion. (Doc. 14 at 5-9.)

    **1.**     **Applicable Legal Standards**

Cases in this circuit distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians). As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987). At least where the treating doctor's opinion is not contradicted by another

doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). Even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for so doing. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

The opinion of an examining physician is, in turn, entitled to greater weight than the opinion of a nonexamining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984). As is the case with the opinion of a treating physician, the Commissioner must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer*, 908 F.2d at 506. And like the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

The opinion of a nonexamining physician cannot, by itself, constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Pitzer v. Sullivan*, 908 F.2d at 506 n.4; *Gallant v. Sullivan*, 753 F.2d at 1456. In some cases, however, the ALJ can reject the opinion of a treating or examining physician, based in part on the testimony of a nonexamining medical advisor. *E.g., Magallanes v. Bowen,* 881 F.2d 747, 751-55 (9th Cir. 1989); *Andrews v. Shalala*, 53 F.3d at 1043; *Roberts v. Shalala*, 66 F.3d 179 (9th Cir. 1995). For example, in *Magallanes*, the Ninth Circuit explained that in rejecting the opinion of a treating physician, "the ALJ did not rely on [the nonexamining physician's] testimony alone to reject the opinions of Magallanes's treating physicians . . .." *Magallanes*, 881 F.2d at 752. Rather, there was an abundance of evidence that supported the ALJ's decision: the ALJ also relied on laboratory test results, on contrary reports from examining physicians, and on testimony from the claimant that conflicted with her treating physician's opinion. *Id*. at 751-52.

//
//
//

### 2. Summary of Relevant Medical Evidence

On or about November 19, 2006, orthopedic surgeon Philip Wirganowicz performed an orthopedic evaluation of Plaintiff, whose chief complaint was low back pain. The doctor reviewed various medical reports and took a medical history from Plaintiff. AR 324-325. Following examination of the cervical and lumbar spines, neck and back range of motion findings were all within normal limits, as were the range of motion findings in both the upper and lower extremities. AR 326-327. Station and gait were also within normal limits, as were the doctor's findings regarding Plaintiff's joints and pulses. AR 327. Neurologic findings were also normal. AR 327-328. Dr. Wirganowicz opined that Plaintiff was capable of lifting twenty-five pounds frequently and fifty pounds occasionally, and that he could sit, stand or walk for about six hours in an eight-hour workday with appropriate breaks. AR 328.

In a Physical Residual Functional Capacity Assessment dated January 25, 2007, reviewing consultant Dr. Irwin Weinreb found Plaintiff capable of lifting ten pounds frequently and twenty pounds occasionally, standing, walking and sitting for about six hours in an eight-hour workday, who can frequently balance and kneel, can occasionally climb ramps and stairs but should avoid ladders, ropes or scaffolds, and may occasionally stoop, crouch and crawl. AR 337-338. Dr. Weinreb found no manipulative, visual, communicative or environmental limitations. AR 339-343.

On or about March 13, 2007, internist Joseph M. Garfinkel completed an internal medicine evaluation of Plaintiff. The chief complaints were identified as right side pain, heart pain, low back pain and headaches. AR 344. Dr. Garfinkel took a history from Plaintiff and reviewed various medical records. AR 344-345. Upon examination, Dr. Garfinkel's findings regarding the head, neck, chest, lungs, cardiovascular system and abdomen were found to be normal. AR 345-347. No spasm was noted in the back, and range of motion findings were largely normal in both the lower and upper extremities. Strength was 5/5 in all extremities. AR 347. Gait was normal. AR 348. The doctor's impression included chronic back pain likely due to osteoarthritis, status post C6 surgery with residual symptoms, chest pain atypical for cardiac etiology, and a history of chronic headaches. AR 348. Dr. Garfinkel opined Plaintiff was

1 capable of lifting and carrying twenty pounds occasionally and ten pounds frequently, could
2 stand, walk and/or sit for six hours in an eight-hour workday, periodically alternating between
3 standing and sitting every two hours, with the ability to occasionally climb, stoop, kneel or
4 crouch.  AR 348.

In a Physical Residual Functional Capacity Assessment prepared April 11, 2007, consultative reviewer M. L. Tambellini, M.D., found Plaintiff capable of lifting twenty-five pounds frequently and fifty pounds occasionally, standing or walking for six hours in an eight-hour workday, sitting for six hours in an eight-hour workday, without limitation regarding pushing or pulling.  AR 359.  The doctor found no postural, manipulative, visual, communicative or environmental limitations.  AR 359-361.

On August 29, 2008, Plaintiff's treating physician, Dr. Aung, completed a Medical Source Statement - Physical wherein he opined that Plaintiff was capable of lifting and carrying, frequently or occasionally, less than ten pounds as a result of diagnoses regarding his right ankle and spine.  The doctor also determined Plaintiff was capable of standing or walking less than two hours in an eight-hour work day for the same reasons.  AR 493.  Dr. Aung believed Plaintiff capable of sitting less than six hours in an eight-hour day, identifying three hours as Plaintiff's ability.  Further, Plaintiff was to alternate sitting and standing every three hours.  He was never to climb, balance, stoop, kneel, crouch or crawl.  AR 494.  Finally, Plaintiff was to avoid moving machinery and extreme temperatures.  AR 494.

### 3.     ALJ's Findings

Here, in relevant part, ALJ Kopicki found as follows:

> [I]n November 2006 Consultative orthopedist Dr. Wirganowicz diagnosed chronic low back pain and concluded that the claimant could perform the full range of medium work.  The doctor's opinion is afforded some weight since at the time of the examination there was very little objective findings.
> In March 2007 Dr. Garfinkel performed a consultative internal medicine examination of the claimant, who complained of right side pain, heart pain, low back pain, and headaches.  The claimant's physical examination was essentially within normal limits.  Dr. Garfinkel diagnosed chronic back pain most likely osteoarthritis, status post C6 surgery with residual symptoms, right chest pain atypical for cardiac etiology, and a history of chronic headaches.  The doctor concluded that the claimant could lift and carry 20 pounds occasionally and 10 pounds frequently; and stand or walk 6 hours and sit 6 hours in an 8-hour workday with alternating standing and sitting every 2 hours; and occasional climbing,

10

> stooping, kneeling or crouching. Dr. Garfinkel's medical opinion is given substantial weight as he had the opportunity of reviewing multiple medical records, plus he based his opinion both on clinical findings as well as the claimant's subjective complaints of pain.
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
> Dr. Aung completed a medical source statement (physical) in August 2008 indicating that the claimant had a less than sedentary residual functional capacity. Dr. Aung's opinion is given no weight as it is not supported by objective clinical evidence, is inconsistent with the claimant's activities of daily living and contrary to other more persuasive medical source opinions of record.
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
> The State agency medical consultants concluded that the claimant could perform work at the light level of exertion with occasional stooping, crouching and crawling. In April 2007 they completed another residual functional capacity assessment indicating that the claimant can perform the full range of work at the medium level of exertion. However, I give substantial weight to the State agency medical consultants' opinion that the claimant can perform light work which is consistent with consultative examiner Dr. Garfinkel's opinion discussed above.

AR 14-15, internal quotations omitted.

**4.     Analysis**

Here, ALJ Kopicki afforded no weight to Dr. Aung's opinion for specific and legitimate reasons after it was contradicted by both an examining physician and consultative reviewing physicians: (1) Dr. Aung's opinion was not supported by objective clinical evidence, (2) was inconsistent with Plaintiff's activities of daily living, and (3) was contrary to other medical source opinions.

A lack of supporting clinical findings is a valid reason for rejecting a treating physician's opinion. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The consistency of a medical opinion with the record as a whole is also a relevant factor in evaluating a medical opinion. *Lingenfelter v. Astrue*, 504 F.3d 1028, 0042 (9th Cir. 20047); *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Additionally, a contrary opinion by an examining source can be a specific and legitimate reason for rejecting the opinion of a treating physician. Here, examining physician Dr. Garfinkel's opinion was clearly contrary to that of treating physician Dr. Aung. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Andrews v. Shalala*, 53 F.3d at 1041 ("Where the opinion of the claimant's treating physician is contradicted, and the opinion of a nontreating source is based on independent clinical findings that differ from those of the treating physician, the opinion of the nontreating source may itself be substantial evidence; it is then solely the

province of the ALJ to resolve the conflict"). Dr. Garfinkel's findings are independent clinical findings, and thus are substantial evidence. *See Orn v. Astrue*, 496 F.3d at 632; *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir. 1985). Notably too, a treating physician's opinion is not conclusive as to a physical condition or the ultimate issue of disability. *Magallanes*, 881 F.2d at 751.

Dr. Aung treated Plaintiff from May 30, 2008, and thereafter for approximately three months until preparation of the medical source statement. As the Commissioner points out however, while the record as a whole contains information regarding Plaintiff's ankle joint degenerative disease and degenerative disc disease of the spine, Dr. Aung himself did not make those findings upon examination. Rather, treatment records from the Veteran's Administration during the relevant time period establish "that Plaintiff had a cyst containing sperm removed from his right testicle," was followed for psychiatric treatment, and medications were refilled. *See, e.g.* AR 495-602. Where a treating physician's conclusions about a claimant's functional limitations are not supported, the ALJ may reject that opinion. *Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003). Dr. Aung's statements about Plaintiff's functional limitations are not supported by this record.

Finally, Plaintiff's daily activities can be properly considered by the ALJ when assessing medical evidence. Ignoring whether or not Plaintiff continued to jog[5] at the time of the hearing, Plaintiff did testify that he used to attend college courses online, and is able to help his elderly parents with household chores, including mowing and watering the lawn, and vacuuming or performing whatever other household chores his mother might ask of him. AR 47-48. He cares for three dogs, and uses the computer for email and web surfing. AR 48, 50. Plaintiff also watches about seven hours of television a day. AR 49. He occasionally grocery shops and visits with friends. AR 48, 51. These activities certainly do not comport with Dr. Aung's physically-restrictive opinion, and these differences were properly considered. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).

---

[5]This Court interpreted Plaintiff's testimony to be that he used to jog, but that he stopped doing so after being advised by a physician in Martinez to stop the activity. *See* AR 31.

1     ***The ALJ's Findings Regarding Plaintiff's Credibility***

2     Next, Plaintiff complains that ALJ Kopicki erred when he found Plaintiff to be both
3 sincere and less than credible. (Doc. 14 at 9-16.)

4     A two step analysis applies at the administrative level when considering a claimant's
5 subjective symptom testimony. *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). First, the
6 claimant must produce objective medical evidence of an impairment that could reasonably be
7 expected to produce some degree of the symptom or pain alleged. *Id*. at 1281-1282. If the
8 claimant satisfies the first step and there is no evidence of malingering, the ALJ may reject the
9 claimant's testimony regarding the severity of his symptoms only if he makes specific findings
10 that include clear and convincing reasons for doing so. *Id*. at 1281. The ALJ must "state which
11 testimony is not credible and what evidence suggests the complaints are not credible." *Mersman
12 v. Halter*, 161 F.Supp.2d 1078, 1086 (N.D. Cal. 2001), quotations & citations omitted ("The lack
13 of specific, clear, and convincing reasons why Plaintiff's testimony is not credible renders it
14 impossible for [the] Court to determine whether the ALJ's conclusion is supported by substantial
15 evidence"); Social Security Ruling ("SSR") 96-7p (ALJ's decision "must be sufficiently specific
16 to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave
17 to the individual's statements and reasons for that weight").

18     An ALJ may consider many factors when assessing the claimant's credibility. *See Light
19 v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). The ALJ can consider the claimant's
20 reputation for truthfulness, prior inconsistent statements concerning his symptoms, other
21 testimony by the claimant that appears less than candid, unexplained or inadequately explained
22 failure to seek treatment, failure to follow a prescribed course of treatment, claimant's daily
23 activities, claimant's work record, or the observations of treating and examining physicians.
24 *Smolen*, 80 F.3d at 1284; *Orn v. Astrue*, 495 F.3d at 638. "An ALJ is not 'required to believe
25 every allegation of disabling pain' or other non-exertional impairment." *Orn v. Astrue*, 495 F.3d
26 at 635.

27     The first step in assessing Plaintiff's subjective complaints is to determine whether
28 Plaintiff's condition could reasonably be expected to produce the pain or other symptoms

alleged. *Lingenfelter v. Astrue*, 504 F.3d at 1036. Here, the ALJ found that Plaintiff had the severe impairments of degenerative disease of the cervical spine status post fusion, degenerative disc disease of the lumbar spine, degenerative joint disease of the right ankle, sleep apnea, hepatitis C and an adjustment disorder. AR 10. This finding satisfied step one of the credibility analysis. *Smolen*, 80 F.3d at 1281-1282.

"Despite the inability to measure and describe it, pain can have real and severe debilitating effects; it is, without a doubt, capable of entirely precluding a claimant from working." *Fair v. Bowen*, 885 F.2d at 601. It is possible to suffer disabling pain even where the degree of pain is unsupported by objective medical findings. *Id*. "In order to disbelieve a claim of excess pain, an ALJ must make specific findings justifying that decision." *Id*. (citing *Magallanes v. Bowen*, 881 F.2d at 755). The findings must convincingly justify the ALJ's rejection of the plaintiff's excess pain testimony. *Id*. at 602. However, an ALJ cannot be required to believe every allegation of disabling pain. "This holds true even where the claimant introduces medical evidence showing that he has an ailment reasonably expected to produce some pain." *Id*. at 603.

Here, after summarizing Plaintiff's testimony and the medical record (AR 12-15), ALJ Kopicki made the following findings:

> In sum, the claimant lives at home and helps his elderly parents with daily activities. He presented at the hearing as a tanned, robust individual. He had an excellent response to neck surgery. He has Hepatitis C for which he underwent treatment in the past and currently is not sure whether he has any associated symptoms. He has pain and discomfort secondary to post traumatic changes in an ankle and degenerative changes in his lower back, yet can do yard work, jog, shops, pick up after himself, vacuum, look after his two dogs, read, and watch television. He no longer drives but that is because he was convicted of DUI. He retained the attention and concentration to take college classes, using the computer to study online. Again, he was a sincere witness but to the extent his allegations suggest an inability to perform unskilled light work they are considered no[t] fully credible.

AR 15.

The ALJ did not err. He provided clear and convincing reasons for rejecting Plaintiff's testimony as it related to Plaintiff inability to perform unskilled light work. ALJ Kopicki's reasons included his own observations during the hearing, Plaintiff's activities of daily living,

and the objective medical evidence available.  All of these considerations were proper.  First, an ALJ may properly rely upon his observations made during the administrative hearing.  *See Thomas v. Barnhart*, 278 F.3d 948, 960 (9th Cir. 2002); *Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992). Next, an ALJ can look to the activities of daily living as part of the credibility analysis.  *See Orn v. Astrue*, 495 F.3d at 638 (the ALJ may discount a claimant's credibility based on daily activities); *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005); *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations); *Fair v. Bowen*, 885 F.2d at 603; *Thomas v. Barnhart*, 278 F.3d at 958-59.  Lastly, an ALJ can consider how a claimant's allegations are inconsistent with the medical evidence.  *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008); *Osenbrock v. Apfel*, 240 F.3d 1157, 1166 (9th Cir. 2001); *see also* 20 C.F.R. § 416.929 (objective medical evidence can be used in determining credibility; inconsistencies in evidence will support a rejection of credibility) & Social Security Ruling 96-7p (objective medical evidence is a useful indicator to assist in making a reasonable conclusion about credibility and the ability to function).

      Moreover, Plaintiff's argument that because ALJ Kopicki found Plaintiff to be a sincere witness, he should also have found him to be credible, in not persuasive.  Sincerity and credibility can be exclusive.  Plaintiff can sincerely believe himself to be disabled, and yet, as pointed out by the ALJ here, there is evidence to the contrary in the form of medical records and Plaintiff's own abilities despite his severe impairments.

      Finally, it is not the role of this Court to redetermine Plaintiff's credibility *de novo*. Although evidence supporting an ALJ's conclusions might also permit an interpretation more favorable to the claimant, if the ALJ's interpretation of evidence was rational, as here, the Court must uphold the ALJ's decision where the evidence is susceptible to more than one rational interpretation.  *Burch v. Barnhart*, 400 F.3d at 680-81.

1   This Court finds that ALJ Kopicki's credibility findings justify his rejection of Plaintiff's pain testimony. *Fair v. Bowen*, 885 F.2d at 602. Therefore, his findings are supported by substantial evidence and are free of legal error.

## **CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff, Larry D. Smith.

IT IS SO ORDERED.

Dated:   **November 3, 2011**              **/s/ Gary S. Austin**
                                    UNITED STATES MAGISTRATE JUDGE